[No. F023059. Fifth Dist. Sept. 20, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE JOEL ALVAREZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II., IV., and VI.-IX.

## COUNSEL

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Alan Ashby, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WISEMAN, J.—In this appeal, we are faced with a silent record with respect to whether the trial court would have exercised its discretion recognized in *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53

Cal.Rptr.2d 789, 917 P.2d 628] to strike priors alleged pursuant to the "Three Strikes" law. Although many Three Strikes issues were raised in the trial court, the discretionary power to strike priors pursuant to Penal Code section 1385 was neither expressly nor impliedly among them. Accordingly, we find Jose Joel Alvarez (defendant) is not entitled to any relief on this appeal because the appellate record fails to disclose whether the trial court may have misunderstood its Penal Code section 1385 discretionary power to strike a prior conviction alleged pursuant to the Three Strikes law.

We also conclude the trial court correctly refused to allow defendant to explicitly refer to the fact he faced a 25-year-to-life sentence under the Three Strikes law as a reason why he confessed at the time of his arrest, and then later recanted.

## PROCEDURAL HISTORY

By information, defendant was charged with felonious possession of cocaine base (count 1; Health & Saf. Code, § 11350, subd. (a)), misdemeanor possession of drug paraphernalia (count 2; Health & Saf. Code, § 11364), and being under the influence of a controlled substance (count 3; Health & Saf. Code, § 11550, subd. (a)), also a misdemeanor. It was further alleged defendant had suffered three strike priors in violation of Penal Code[1] section 667, subdivisions (c) through (j), as follows: a 1985 conviction for burglary; a 1987 conviction for robbery; and a 1987 conviction for attempted robbery.

Defendant pled not guilty and denied the allegations. In bifurcated proceedings, defendant was found guilty by jury trial on counts 1 and 2, and not guilty on count 3. The jury found the prior conviction allegations were true.

Probation was denied, and defendant was sentenced to state prison for an indeterminate term of 25 years to life on count 1. A concurrent term of six months was imposed on count 2.

Timely notice of appeal was filed.

## FACTUAL HISTORY

About 2:20 a.m. on June 12, 1994, Officer James Gaines was on patrol when he observed a car parked in the parking lot of a shopping mall. Gaines saw what appeared to be a flame inside the car on the driver's side. The flame went out when he was 100 feet or more from the car. The flame was

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

similar to that used when someone smokes cocaine base, which led Gaines to suspect narcotics activity.

Officer Gaines parked behind the car and approached the driver's side of the vehicle. Gaines knocked on the window and defendant, who was seated in the driver's seat, rolled down the window. Whitish smoke escaped out of the open driver's window. Neither party in the car was smoking a cigarette and there was no smell of tobacco. Defendant's companion was subsequently identified as Leticia Navarro.

Defendant claimed he had no identification. His eyes were droopy like he was sleepy, his speech was a little thick and slow, his motor coordination was impaired, and there was a moderate odor of alcohol on his breath. At Gaines's request, defendant got out of the car.

During a patdown search of defendant, Officer Gaines noted certain symptoms of narcotics use—some muscle rigidity, elevated body heat, and nystagmus (bouncing of the eyes). Defendant's pupils also appeared dilated. Based on his training and experience, Gaines believed defendant had used some form of narcotics that night.

Gaines inspected the driver's seat where defendant had been sitting and saw several pieces of an off-white chunky substance which he suspected was cocaine base. Defendant was arrested.

Gaines asked Navarro to get out of the vehicle. As she did so, she made a downward movement with her hand as if she were trying to conceal something under the car. However, the object which she tossed hit the bottom portion of the door jamb and bounced back into the vehicle. Gaines retrieved the discarded object. Although Navarro had a slight odor of alcohol about her, she did not appear to be under the influence of narcotics. The item Navarro had discarded was a piece of white paper towel which contained a rock-like substance. She was then arrested.

Officer Gaines searched the vehicle and found a rolled-up piece of aluminum foil to the right of the driver's seat, one end of which appeared to have been burned. Near that item was a burn mark on the carpet. Next to the foil was a butane disposable cigarette lighter. In the same area was a fragment of a copper scouring pad. All of the items found could be used for smoking cocaine base. Gaines also found a wallet containing defendant's identification card underneath the driver's seat.

After he was read his constitutional rights while seated in Officer Gaines's vehicle, defendant waived his rights and agreed to talk. Defendant stated that

all the cocaine found in the car was his, and Navarro had nothing to do with it. Defendant stated he had given some cocaine to his companion to hold for him. He also stated he had been smoking cocaine before Gaines drove up, which he had purchased in Bakersfield for $10. Defendant stated he had smoked cocaine for years.

After she was informed that she was under arrest, Navarro volunteered a statement that the cocaine was not hers.

The off-white chunky substances and the rock in the paper towel which were seized from the car were tested and found to contain usable amounts of cocaine base.

### Defense

Defendant testified his wife, Leticia Navarro, had a cocaine problem. On the evening of his arrest both had been drinking beer. He drove Navarro to Bakersfield so she could buy cocaine for herself because he did not want her to go alone. Navarro left the car briefly in an area populated by African-Americans in Bakersfield. While returning from Bakersfield, Navarro told defendant to pull over because she wanted to smoke cocaine.

Defendant identified the piece of aluminum foil and the piece of copper scouring pad as a pipe which his wife used to smoke the cocaine. When a police officer approached, defendant warned Navarro, who attempted to hide the pipe. Defendant was watching the police officer and did not see what Navarro did with the cocaine or the pipe.

Defendant admitted telling the officer that all of the cocaine belonged to him, but stated he did so because he did not want his wife to go to jail. Navarro was arrested anyway and subsequently received diversion and counseling.

Defendant explained he was now recanting his confession because his wife had been arrested anyway and her case had been resolved. Furthermore, he was now facing prison and it would be worse for him because of his record of prior felony convictions and jail time. Defendant admitted he had prior convictions for burglary in 1985, and for robbery and attempted robbery in 1987.

Defendant denied having had any conversations with his wife after his arrest about how either of them would testify at his trial. He had no explanation for the fragments of cocaine he was sitting on at the time of his

arrest, although he indicated his wife and her brother may have used the car to purchase cocaine.

Leticia Navarro testified she had a cocaine problem that began in 1989 because of the influence of her brothers. She generally corroborated defendant's account of their arrests, taking full responsibility for purchase, possession, use, and attempted concealment of the cocaine and pipe.

Dr. Kimball Dawkins, a clinical psychologist, stated that in his opinion, defendant's beliefs and attitudes were those of the traditional Mexican-American male, which stereotypically included an authoritarian and controlling attitude, a willingness to protect the wife and children from outside threats, and sometimes a willingness to take responsibility for the acts of family members to protect them.

## DISCUSSION

### I. *The confession: reference to punishment as a motive to recant*

■ Defendant contends the trial court erred by not allowing any reference to the Three Strikes law or the 25-year-to-life punishment defendant faced if he were convicted of the felony charge and the prior strike allegations were found true. Even though the court agreed to permit reference to a long period of confinement with no reference to the actual number of years, he asserts this was still insufficient "to present a clear picture of his motive for recanting his confession." He concludes this was error of constitutional magnitude. We disagree.

■ "It is settled that in the trial of a criminal case the trier of fact is not to be concerned with the question of penalty, punishment or disposition in arriving at a verdict as to guilt or innocence." (*People* v. *Allen* (1973) 29 Cal.App.3d 932, 936 [106 Cal.Rptr. 43], fn. omitted.) CALJIC No. 17.42, which was read to defendant's jury, advised them not to discuss the subject of penalty or punishment in arriving at their verdict. "Without that advice a jury may permit their consideration of guilt to be deflected by a dread of seeing the accused suffer the statutory punishment." (*People* v. *Shannon* (1956) 147 Cal.App.2d 300, 306 [305 P.2d 101].)

■ Defendant concedes evidence of punishment is generally irrelevant to the question of guilt, and cites no contrary authority. Even so, he contends that evidence "he was facing a term of twenty-five years to life for possession of cocaine when he decided to recant his confession, was indeed highly probative, and the exact term he was facing was indeed a motive likely to

render even the most protective of Mexican-American males hesitant to take the blame for his wife."

Defendant's relevancy argument is marginal. First, by the time defendant's case went to trial, Navarro had already resolved her case by entering some sort of drug diversion program. Assuming Navarro successfully completed drug diversion, she no longer faced additional jail or prison time. Thus, it was no longer necessary for defendant to take the blame for his wife. She could testify the drugs and paraphernalia belonged to her with total impunity; defendant would recant his confession, and if the jury believed his explanation, both of them would escape their charges relatively unscathed.

Second, *why* defendant chose to recant his confession was irrelevant. For purposes of evaluating the reliability of defendant's confession, the only relevant question was: "If the defendant is innocent, why did he previously admit his guilt?" (*Crane* v. *Kentucky* (1986) 476 U.S. 683, 689 [90 L.Ed.2d 636, 644, 106 S.Ct. 2142].) Unlike *Crane,* here, the trial court did not prevent defendant from presenting evidence of *why* he confessed that all of the cocaine belonged to him. Defendant was able to fully explain that he had confessed because he did not want his wife to go to jail. Thus, there was no error.

■ As a general rule, motive for testifying may be relevant and probative in a given case. Defendant aptly points out motive for testifying is relevant when a witness has agreed to testify as part of a plea bargain settling criminal charges against the witness. Similarly, any person who faces criminal conviction and incarceration for any period of time has a motive to lie when he or she is a criminal defendant on trial. It is normally the prosecutor and not the accused who benefits when a confession is recanted because of the punishment that awaits. On the other hand, when a lengthy period of incarceration is involved, such evidence can "backfire" against the prosecution to the extent the jury feels sympathy for the defendant. (See *People* v. *Shannon*, *supra*, 147 Cal.App.2d at p. 306.)

■ The prosecutor in defendant's case had good reason to oppose admission of this type of evidence. By the same token, defendant had little to lose, and was willing to gamble the jury would consider evidence of punishment for the improper purpose of engendering sympathy. All in all, defendant's argument regarding how this evidence strengthened his credibility because it explained why he recanted at such a late date is unpersuasive. We fail to see how a reasonable finder of fact could conclude the possibility of a lengthy incarceration would motivate defendant to tell the truth.

Defendant's reliance on *Olden* v. *Kentucky* (1988) 488 U.S. 227 [102 L.Ed.2d 513, 109 S.Ct. 480] is misplaced. In *Olden,* the defendant was

denied his constitutional right of conducting reasonable cross-examination. Olden and another African-American were accused of rape and sodomy of a young White woman. The defense was consent, and the defense theory was the victim lied to protect her relationship with her boyfriend. Any evidence of this relationship was excluded by the trial court, apparently because the boyfriend was African-American and the court believed this fact would inflame the jurors' racial prejudice and redound against the complaining witness. (*Id.* at pp. 230-231 [102 L.Ed.2d at pp. 518-519].) The Supreme Court held the trial court's refusal to allow the victim to be cross-examined about the nature of her relationship with her boyfriend amounted to a denial of the defendant's right to confront an adverse witness.

This case and *Olden* have little in common except both allege an erroneous exclusion of evidence occurred. In *Olden,* evidence that the complaining witness had a motive to lie (to protect her relationship with her boyfriend) was highly relevant to the issue of consent, and with respect to whether the sex acts were forced. The trial court precluded the introduction of any evidence on this subject finding the defendant's right to effective cross-examination was outweighed by the danger of prejudice to the victim.

Unlike *Olden,* where no evidence regarding the alleged victim's relationship with her boyfriend was allowed, defendant was allowed to testify about his reasons for recanting his confession. The only thing he was precluded from doing was specifically mentioning the Three Strikes law and the fact he could receive a sentence of 25 year to life. In sum, *Olden* does not help defendant's position.

Here, defendant's motive to recant his confession had little, if any, probative value on the issue of defendant's credibility or his defense. Further, even if the proffered evidence was relevant, its minimal probative value was substantially outweighed by the possibility that its admission created a substantial danger of undue prejudice.

II. *Unanimity instruction**

. . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Defendant's prior burglary conviction is a strike.*

 Defendant contends the first of his three prior convictions (a first degree burglary conviction under section 459 entered on April 24, 1985, in People v. Alvarez (Super. Ct. L.A. County, No. A761878) (hereafter, the

*See footnote, *ante,* page 679.

prior)) was not a valid prior conviction for purposes of the Three Strikes law. He alleges this is so because the prior was previously dismissed in the original trial court pursuant to section 1385. Respondent counters that this claim should have been presented to the jury which found the prior conviction to be valid, and that defendant's motion challenging the prior in the trial court was untimely and legally insufficient. Respondent further contends the purported dismissal was only of a petition alleging a probation violation, as found by the trial court. Moreover, the dismissal was legally insufficient pursuant to section 1385 because no reasons for the dismissal appear in the record.

In a bifurcated trial held on September 13, 1994, the jury, after reaching verdicts on the underlying charges, found the prior, as well as two others that were alleged, to be true. Defendant did not attack the prior on the basis of the purported section 1385 dismissal. Subsequently, on December 22, 1994, defendant filed a motion to strike the prior based solely on a copy of the court docket in People v. Alvarez, *supra*, case No. A761878, which was submitted as an exhibit. No other evidence or case authority was presented. The final court docket entry indicates "1-22-88 Ex Parte case dism per 1385PC BW recalled [illegible]."

Based solely on this entry, defendant argued below and contends on appeal that the entire case was dismissed in the interests of justice on the court's own motion under section 1385.[2] The effect, defendant argues, is the prior conviction was wiped out and cannot be used as a prior conviction for any purpose. (See *People* v. *Superior Court* (*Flores*) (1989) 214 Cal.App.3d 127, 136 [262 Cal.Rptr. 576] ["The defendant stands as if he had never been prosecuted for the charged offense"].) The trial court disagreed, finding the notation indicated only that a pending petition for revocation of probation was dismissed and/or finding the trial court had lacked jurisdiction to enter a section 1385 dismissal.[3]

We reject respondent's contention that defendant's motion was untimely. No timeliness objection was made in the trial court, thus the timeliness issue was not properly preserved.

---

[2]Section 1385, which was last amended in 1986, provides, in pertinent part:

"(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

[3]The court was incorrect with regard to the jurisdiction basis, and respondent does not argue otherwise. (See *People* v. *Banks* (1959) 53 Cal.2d 370, 384 [1 Cal.Rptr. 669, 348 P.2d 102]; *People* v. *Lewis* (1992) 7 Cal.App.4th 1949, 1954 [10 Cal.Rptr.2d 376] ["The powers of the court, when the defendant is granted probation are almost absolute in character"].)

■ Furthermore, "A motion to strike a prior conviction allegation from an accusatory pleading is a proper vehicle for attacking such a conviction if the presence of the prior will activate the 'statutory machinery relating to penal status or severity of sanction . . .' in a subsequent criminal proceeding." (*In re Rogers* (1980) 28 Cal.3d 429, 434 [169 Cal.Rptr. 222, 619 P.2d 415].) "There are no statutory provisions specifying the time for a motion to strike priors. The motion can be made at any time from the date of [a] plea, finding or verdict of guilty until pronouncement of judgment."[4] (*Gonzalez* v. *Municipal Court* (1973) 32 Cal.App.3d 706, 710, fn. 2 [108 Cal.Rptr. 612].) Generally, the motion should be made to the trial court before a trial on the prior or an admission from the defendant is taken. (*In re Cortez* (1971) 6 Cal.3d 78, 89-90 [98 Cal.Rptr. 307, 490 P.2d 819]; *People* v. *Curtis* (1969) 70 Cal.2d 347, 360-361 [74 Cal.Rptr. 713, 450 P.2d 33], disapproved on other grounds in *People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1222 [275 Cal.Rptr. 729, 800 P.2d 1159].) Thus, defendant was required to establish the prior conviction, which the prosecution had proven to the jury beyond a reasonable doubt, was for some reason invalid or void as a matter of law. (See *People* v. *Sumstine* (1984) 36 Cal.3d 909, 923 [206 Cal.Rptr. 707, 687 P.2d 904] [holding that after the prosecutor presents evidence sufficient to show defendant has suffered the prior conviction, it is incumbent on the defendant to produce evidence that his constitutional rights were infringed in the prior proceeding].)

■ Here, defendant failed to meet his burden of establishing that his entire case had been dismissed or terminated based on the court's section 1385 discretion. The only evidence submitted on this issue was the earlier referenced handwritten notation in the court's docket entries. No reporter's transcript of the proceeding in which the case was allegedly dismissed was available, which no doubt would have made clear what action the court was taking. More importantly, defendant did not present as evidence the court's minute order reflecting the reasons, if any were stated, for its dismissal of either the entire case or simply the violation of probation petition as required under section 1385.

■ "Requirement of a statement of reasons for dismissal pursuant to section 1385 is mandatory, not directory [citation], and in the absence of such statement 'the order may not be considered a dismissal under section 1385.' [Citation.]

"It is manifest that because even an *express* order of dismissal pursuant to section 1385 is ineffective in the absence of a statement of reasons, a use

---

[4]Respondent does not argue the court had no jurisdiction to hear the motion after jury trial on the priors. Instead, respondent argues the motion to strike the prior should be treated as a motion for new trial on the prior based on newly discovered evidence. Again, this contention was not made in the trial court.

finding cannot be dismissed or struck sub silentio, as defendant claims in this case. There was not, of course, a statement of reasons in support of defendant's claimed striking." (*People* v. *Hunt* (1977) 19 Cal.3d 888, 897 [140 Cal.Rptr. 651, 568 P.2d 376]; see also *People* v. *Superior Court* (*Flores*), *supra*, 214 Cal.App.3d at pp. 135-136 [failure to state reasons in the minutes renders a dismissal under section 1385 invalid]; *People* v. *Price* (1986) 184 Cal.App.3d 1405, 1410 [229 Cal.Rptr. 550] [statement of reasons required on appeal to sustain a dismissal under section 1385, and silent record insufficient].)

 In this case, the docket entries preceding the entry regarding dismissal indicate, as the trial court believed, that the section 1385 dismissal was only with regard to a petition for revocation of probation based on a violation of probation. An entry dated September 23, 1986, indicates defendant's probation was revoked and a no-bail bench warrant issued. As noted by the prosecutor, at the time the disputed docket entry was made (Jan. 25, 1988), defendant was in prison. He was delivered to the Department of Corrections on June 30, 1987, and was not released until he was paroled on January 17, 1989. Thus, the only reasonable inference to be drawn from the record is the section 1385 dismissal pertained only to the revocation of probation allegations then pending with respect to the underlying charge which formed the basis of the prior. However, whether this was or was not the case is immaterial. The fact still remains that defendant failed to meet his burden of showing his entire case had been dismissed, as opposed to just the revocation proceedings. Thus, the trial court properly denied his motion.

Defendant attempts to improperly shift the burden of proof and persuasion to the prosecution. As noted earlier, the prosecution evidence proved the existence of the prior conviction; it was incumbent on defendant to establish its invalidity. Further, a purported dismissal under section 1385 is invalid if there is no statement of reasons in the court's minute order. A silent record, such as this one, is insufficient. Defendant suggests the trial court's finding that only the probation revocation proceedings were dismissed was speculative. To the contrary, it is defendant who engages in speculation by arguing the meager evidence presented to the trial court establishes the entire prior conviction was dismissed under section 1385. Defendant's argument aimed at the trial court's findings applies equally to the evidence he presented in support of his own motion. As such, the motion to strike the prior was properly denied.

In any event, even if the prior was invalid for purposes of the three strikes law, defendant's sentence remains the same since he has two other strikes which require his sentence to be 25 years to life. Thus, any purported error is harmless.

IV. *Priors: brought and tried separately**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

V. *Separation of powers: section 1385*

In a posttrial motion to dismiss or strike the prior convictions alleged pursuant to the Three Strikes law, defendant contended, among other things, that section 667, subdivision (f),[5] is unconstitutional on the ground it violates the separation of powers doctrine. On appeal, defendant raises the same contention. With no basis for support, defendant also contends: "Here, the court held that it was without power to strike a prior conviction under Penal Code section 1385. (RT 1/12/95, p. 22.) This was incorrect. Judgment must be vacated and the case remanded for sentencing." A review of the record fails to support defendant's statement that the court determined it was without power to strike a prior conviction under section 1385. Defendant reads this conclusion into the following statement made by the trial court: "THE COURT: Court finds sentencing scheme 667 does not amount to, under Federal or California constitution, cruel and unusual punishment; find further Penal Code 667 is not violative of power between legislature and judicial branches or legislative and executive branches and find the serious felony convictions that occurred prior to enactment of Penal Code 667 by virtue of the reading of sub-section 667 B, intent of the legislature portion as well as clear reading of that sub-section with sub-section [sic] did indicate that those prior serious and/or violent convictions enacted prior to Penal Code section 667 are properly charged as enhancements thereunder; deny the motion then on constitutionality grounds." We read the above statement by the court very differently than does defendant. Basically, all the trial court held was the three strikes law did not violate the separation of powers doctrine, nor did it constitute cruel and unusual punishment. The specific issue of whether the court retained discretion to strike a prior under section

---

*See footnote, *ante*, page 679.

[5]Section 667, subdivision (f) provides:

"(f)(1) Notwithstanding any other law, subdivisions (b) to (i), inclusive, shall be applied in every case in which a defendant has a prior felony conviction as defined in subdivision (d). The prosecuting attorney shall plead and prove each prior felony conviction except as provided in paragraph (2).

"(2) The prosecuting attorney may move to dismiss or strike a prior felony conviction allegation in the furtherance of justice pursuant to Section 1385, or if there is insufficient evidence to prove the prior conviction. If upon the satisfaction of the court that there is insufficient evidence to prove the prior felony conviction, the court may dismiss or strike the allegation."

1385 was never raised by the parties.[6] Stated simply, the subject never came up. Consequently, it was not addressed by the court.

■ In *People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th 497, the California Supreme Court held "section 1385(a) does permit a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*Id*. at pp. 529-530.) With respect to section 667, subdivision (f), the court concluded the Three Strikes law is constitutional and does not violate the separation of powers doctrine. (13 Cal.4th at pp. 529-530.)

As further guidance in handling post-*Romero* issues, the high court, at footnote 13, stated as follows: "Our holding, which relates only to sentencing, is fully retroactive. [Citations.] A defendant serving a sentence under the Three Strikes law (§ 667, subds. (b)-(i); § 1170.12) imposed by a court that *misunderstood* the scope of its discretion to strike prior felony conviction allegations in furtherance of justice pursuant to section 1385(a), may raise the issue on appeal, or, if relief on appeal is no longer available, may file a petition for habeas corpus to secure reconsideration of the sentence. Such a petition should be filed in the sentencing court. [Citation.] Such a petition may be summarily denied if the record shows that the sentencing court was aware that it possessed the discretion to strike prior felony conviction allegations without the concurrence of the prosecuting attorney and did not strike the allegations, or if the record shows that the sentencing court clearly indicated that it would not, in any event, have exercised its discretion to strike the allegations. [Citation.]" (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 530, fn. 13, italics added.)

■ It has long been settled that the burden is on an appellant to affirmatively show in the record that error was committed by the trial court: "[I]t is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' (3 Witkin, Cal.Procedure (1954) Appeal, § 79, pp. 2238-2239; [citations].)" *(Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

---

[6]Defendant correctly points out that section 1385 only authorizes the prosecutor and/or the court on its own motion to dismiss in the furtherance of justice. From this, defendant concludes his trial counsel had no standing to bring a motion to strike under section 1385. Although procedurally correct, we observe that it is not uncommon for defense counsel to informally invite a trial court to, on the court's own motion, exercise its discretion pursuant to section 1385. This procedure has been upheld as not violating section 1385. (*People* v. *Ritchie* (1971) 17 Cal.App.3d 1098, 1104 [95 Cal.Rptr. 462].)

 Defendant appears to contend the mere denial of a constitutional challenge to the Three Strikes law based on a separation of powers theory, automatically means the trial court believed it had no discretion to strike the prior conviction allegations (priors). We disagree. Based on this record, there are at least two possible explanations with respect to what the trial court was thinking when it made its comments at sentencing, quoted above. First, the trial court could have believed it had no discretion to strike the priors, and the Three Strikes law did not violate the separation of powers doctrine. Second, the trial court could have believed it had discretion to strike the priors, and thus the Three Strikes law did not violate the separation of powers doctrine. In fact, the latter explanation is exactly what occurred in *Romero*. There, the trial court determined the Three Strikes law was constitutional, and did not deprive the court of its discretion to strike priors pursuant to section 1385.

A review of the facts in *Romero* is helpful. In *Romero*, the defendant was charged with possession of .13 grams of cocaine base in violation of Health and Safety Code section 11350, subdivision (a). The court indicated its willingness to consider striking the prior felony conviction allegations if Romero changed his plea to guilty on all counts. The prosecutor objected, arguing the court had no power to dismiss the prior felony allegations. The court disagreed, and struck the prior felony allegations at sentencing after Romero changed his plea. The prosecutor then filed a petition for writ of mandate to require the superior court to vacate its order striking the prior felony conviction allegations. The petition was granted by the Court of Appeal, and it directed a writ issue requiring the trial court to vacate its sentence and permit Romero to withdraw his plea. The Supreme Court granted Romero's petition for review and ruled as noted earlier. (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 506-507.)

Here, defendant has failed to point to any part of the record which affirmatively shows the trial court "misunderstood the scope of its discretion to strike prior felony conviction allegations . . . pursuant to section 1385(a)." Instead, all we have is a record showing the trial court rejected defendant's separation of powers argument, and nothing more. We decline to automatically presume the trial court erroneously believed it had no discretion to strike defendant's priors in the absence of some affirmative showing that it misunderstood its discretion. To do so would require us to engage in pure speculation, and violate a basic tenet of appellate review.

In conclusion, the issue of whether the trial court misunderstood its discretion to strike the priors pursuant to section 1385 cannot be resolved based on this appellate record. "Since the record discloses no basis for

defendant's assertion, we decline to engage in such speculation." (*People* v. *Rodrigues* (1994) 8 Cal.4th 1060, 1116, fn. 20 [36 Cal.Rptr.2d 235, 885 P.2d 1].) Defendant is left with his remedy specifically provided for by the *Romero* case, to petition the trial court for relief by writ of habeas corpus.

VI.-IX.*

. . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Thaxter, Acting P. J., and Harris, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 11, 1996. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 679.