Filed 11/21/25  P. v. Rose CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084863 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVA010494) |
| EARL ROSE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Bernardino County, Ingrid A. Uhler, Judge.  Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Earl Rose appeals from an order striking his one-year prison prior enhancement under Penal Code[1] section 1172.75. He contends the trial court erred by (1) not conducting a full resentencing hearing after striking the prison prior enhancement and (2) denying his request for a *Franklin*[2] hearing. We affirm.

PROCEDURAL BACKGROUND

In 2009, a jury convicted Rose of first degree felony murder (§ 187, subd. (a); count 1), two counts of attempted murder (§§ 664, 187, subd. (a); counts 2, 4), robbery (§ 211; count 3), attempted robbery (§§ 664, 211; count 5), and possession of a firearm by a felon (§ 12021, subd. (a)(1); count 6).[3] As to counts 1 to 5, the jury found true Rose personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). The jury also found he had four prior strike convictions (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)), five serious felony prior convictions (§ 667, subd. (a)(1)); and one prison prior term conviction (§ 667.5, subd. (b)).

At sentencing in 2010, the trial court sentenced Rose to life without the possibility of parole plus 25 years to life for the firearm enhancement for count 1; a consecutive term of 25 years to life plus 25 years to life for the firearm enhancement for count 2; and a consecutive term of 25 years to life plus 25 years to life for the firearm enhancement for count 4. The court

---

[1] Undesignated statutory references are to the Penal Code.

[2] *People v. Franklin* (2016) 63 Cal.4th 261, 283–284 (*Franklin*).

[3] Rose was 23 years old when he committed these offenses.

imposed and stayed, pursuant to section 654, consecutive terms of 25 years to life for the firearm enhancements on counts 3, 5, and 6.  In addition, the court imposed a total of 25 years for the five prior serious felony convictions and one year for the prior prison term conviction, consecutive to count 4.  The court ordered stricken the remaining sentencing enhancements.  The total indeterminate sentence was life without the possibility of parole plus 125 years to life.  The total determinate sentence was 26 years.[4]

On June 22, 2023, the trial court denied Rose's request to develop and preserve evidence for later use in a youth offender parole hearing, also known as a *Franklin*[5] hearing, on the grounds he was ineligible for a youth offender parole hearing because "he was sentenced to life without parole."  Important here, Rose did not file a notice of appeal from this denial order.

On August 2, 2024, the trial court held a hearing at which it recalled Rose's sentence pursuant to section 1172.75 and struck the prison prior

---

[4]     We note a discrepancy between the sentence recorded in the March 26, 2010 minute order and the sentence in the April 7, 2010 abstract of judgment.  The resentencing court's oral pronouncement is consistent with the abstract of judgment.  "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385, citing *People v. Mitchell* (2001) 26 Cal.4th 181, 185–186.)

[5]     See *Franklin*, *supra*, 63 Cal.4th at pages 283–284 (holding that the youth offender parole mechanism necessitates preserving a record of the defendant's youth-related characteristics and circumstances so the parole board can properly discharge its obligation to provide youth offender parole hearings); see also *In re Cook* (2019) 7 Cal.5th 439, 458–459 (an offender who will later become eligible for a youth offender parole hearing is entitled to a court proceeding to develop and preserve evidence of youth-related characteristics and circumstances).

conviction, reducing his sentence by one year. This was done pursuant to 2021 legislative action that rendered "legally invalid" any enhancement imposed pursuant to section 667.5, subdivision (b), imposed before 2020. (§ 1172.75, subd. (a).) Rose timely filed a notice of appeal from this order.

## DISCUSSION

On appeal, Rose makes two separate claims: (1) the trial court erred and abused its discretion under section 1172.75 by not conducting a full resentencing hearing after striking the prison prior enhancement; and (2) the court erred by denying him a *Franklin* hearing. We reject his first claim of error on the merits, and conclude we lack jurisdiction to review the order that is the basis for his second claim of error.

### I.

### *No Abuse of Discretion Under Section 1172.75*

A.    *Additional Background*

On August 2, 2024, the trial court called Rose's case for hearing. The record reflects that Rose appeared over "Zoom" and was represented by a deputy public defender.

The trial court began by stating the hearing was "for the mere purpose of striking [Rose's] one-year prior under [section] 667.5[, subdivision] (b) and pursuant to [section] 1172.75." It further stated there was going to be "nothing beyond that because of the nature of the charged offenses and [Rose's] previous sentence and the fact that [Rose is] a public safety risk."

Rose then addressed the trial court directly. He asked the court to identify the information on which it was basing its determination that he was a public safety risk. The court responded, "Based on the nature of the convictions and the charges and the fact that you do have a sentence of life without possibility of parole."

Rose questioned whether the court had considered his development in prison. He stated: "[T]here may have been some development in me, to maybe having once been deemed, properly so, a public safety risk[.]" He asserted there were "other things that have occurred in my life since then that may have granted me to a degree of normalized citizenship and behaviors" supporting "a different reconsideration of that decision." After the court reminded Rose he was serving a life without parole sentence, Rose stated, "[T]here can be certain, you know, factors that could have been considered that . . . could have granted you an opportunity to make a different decision." He explained that certain individuals, despite the "deeds we committed, have actually made a change in their lives," and told the court he was "living that change in here." As Rose was beginning to discuss "factors . . . to thereby determine that I've changed," there was a distortion in the audio video feed, and the court reporter asked for clarification. The court stated, "So I'll indicate that [Rose] said that [he has] made great strides in terms of rehabilitation, and if we look at [his] C-file, that we would see that [he has] made great strides." Rose confirmed the court's statement was correct.

The court then invited argument from the prosecutor. The prosecutor opposed any further reduction in Rose's sentence. He relied on the facts of Rose's offense, including that he "shot and killed a girl and shot both of her parents in a robbery at a business that they own, leaving them with very, very bad injuries, very significant, life-altering injuries," "did a shooting robbery the previous evening," and had prior strikes for robbery as well as a case from 1999 in which he was sentenced to "56 to life for robbery, attempted murder as well."

5

The court then made its ruling: "So we recognize the fact that you always try to better yourself in life, and we are encouraging you to do so. But again, based on the statement of the facts in the Court of Appeals opinion and the fact of your significant history prior to, I am not going to reduce anything further than except for, obviously, striking the one-year prior and determine that, based on the statement of the facts of the convictions, that you are a public safety risk." The court stated that Rose "destroyed a family" and remarked on the loss he caused by killing a child. It concluded, "So for those reasons, I am not going to use any further discretion to strike any additional enhancements except for the fact that I have to by operation of law. Under 1172.75, I will strike the one [section] 667.5[, subdivision] (b) prior, so making it a total of life without possibility of parole followed by 150 years."

Rose expressed remorse and stated he had changed greatly after having been incarcerated for 26 years. The court acknowledged his remorse but stated, "those are the orders of the Court."

B.  *Guiding Principles*

Before 2019, section 667.5, subdivision (b), required trial courts to " 'impose a one-year term for each prior separate prison term or county jail term' served for a felony." (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1054 (*Rhodius*).) In 2019, the Legislature amended section 667.5, subdivision (b), "to eliminate prior-prison-term enhancements for all prior crimes except for 'sexually violent offense[s].' " (*Rhodius*, at p. 1054.) The Legislature then made this change retroactive through the enactment of current section 1172.75, which provides: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense

6

as defined in subdivision (b) of [s]ection 6600 of the Welfare and Institutions Code is legally invalid." (§ 1172.75, subd. (a); *Rhodius*, at p. 1054.)

"A defendant serving a term for a judgment that includes a now-invalid enhancement is entitled to resentencing." (*Rhodius, supra*, 17 Cal.5th, at p. 1055.) Section 1172.75 mandates that "[r]esentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety," and "shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).) "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) We review for abuse of discretion a court's finding that a reduction in sentence under section 1172.75 would endanger public safety. (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856.)

C.    *Contentions on Appeal and Analysis*

Rose contends the sentencing court erred and abused its discretion under section 1172.75. He asserts that under subdivision (d)(1) of this provision, the trial court was required to conduct a full resentencing unless the prosecution established by clear and convincing evidence that resentencing him would create a risk to public safety. He claims the court erred and violated the statute by ruling that it would only strike the prior prison term enhancement and "there would not be any further resentencing." He also complains that the court found he was a public safety risk without hearing "any argument or considering any evidence other than the prior offense," and without considering postconviction factors such as his prison record, health, or progress towards rehabilitation.

The People respond that the trial court did not violate section 1172.75. Rather, the court exercised the discretion afforded by this statute in Rose's favor when it reduced his sentence by striking the one-year prior prison enhancement. Nor did the court fail to consider additional sentencing reductions under other changes in law as required by the obligation to conduct a full resentencing. To the contrary, it considered, but declined, to strike additional enhancements under section 1385, subdivision (c).

We conclude that the People have the better argument. Admittedly, the record of the resentencing hearing is not a model of clarity. However, we presume trial courts understand the law and understand the requirements of the sentencing law in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) In addition, Rose bears the burden of affirmatively demonstrating error. (*People v. Alvarez* (1996) 49 Cal.App.4th 679, 694.) We have carefully considered the record of the resentencing hearing, and we are not persuaded the court committed the errors Rose identifies.

First, the People contend, and we agree, that the trial court's risk to public safety finding was not made pursuant to section 1172.75, subdivision (d)(1). Section 1172.75, subdivision (d)(1) states: "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." Rose's original sentence was life without parole consecutive to 151 years. The trial court struck his one-year prison prior and resentenced him to "life without [the] possibility of parole followed by 150 years." Thus, the court *did* impose "a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement."

(§ 1172.75, subd. (d)(1).)  It therefore necessarily *did not* make a finding that "imposing a lesser sentence would endanger public safety."  (*Ibid*.)

Nor does the record support the view the trial court found Rose to be a risk to public safety without considering postconviction factors.  It is true the trial court initially stated the matter was on calendar "for the mere purpose of striking" the one-year prior prison term enhancement, and there would be "nothing beyond that" because of Rose's underlying offenses, his previous sentence, and the fact that he was a public safety risk.  Rose interprets the court's statement as a refusal to consider any additional evidence or argument.

But this interpretation is not borne out by the remainder of the record, in which the trial court heard Rose describe his rehabilitation, sincere remorse, and good behavior in prison, and it considered the prosecutor's arguments.  The court expressly acknowledged that Rose believed he had "made great strides in terms of rehabilitation," and that this was reflected in his "C-file."  It also "recognize[d]" that Rose was "try[ing] to better [him]self."  The court concluded, however, based on the facts of Rose's offense and significant criminal history, that he was a public safety risk.  It therefore declined "to use any further discretion to strike any additional enhancements" except for the prison prior enhancement.

Rose's related complaints about the scope of the matters the trial court considered also lack merit.  He appears to contend the court was obligated to convene a separate hearing to consider evidence of facts he identified during the hearing.  We are not persuaded.  He bases his claim on *People v. Cooper* (1984) 153 Cal.App.3d 480.  *Cooper* holds that section 1203 obligates trial courts to obtain updated probation reports before resentencing.  (*Cooper*, at

9

pp. 481–484.) But Rose does not raise such an error in this case. Rather, he claims the court failed to consider his own assertedly proffered evidence.

Moreover, we do not discern a need for a further hearing. Generally speaking, a court is not required to receive evidence of a fact that is undisputed. (See Evid. Code, § 210.) As Rose acknowledges, the only evidence he mentioned during the hearing was his prison file. And yet the court appeared to accept as true Rose's position that the "C-file" demonstrated he had "made great strides in terms of rehabilitation," and the prosecutor did not dispute this characterization of Rose's prison file. Because Rose's position about what the prison file would show was undisputed, there was no need for the court to convene a separate hearing to consider the file, nor could Rose have been harmed by the failure to hold a second hearing for that purpose.

We also find no merit in Rose's claim that the trial court erred by failing to consider Rose's "health conditions." Rose bases this claim on *Nijmeddin v. Superior Court* (2023) 90 Cal.App.5th 77, 83. *Nijmeddin* involved a request for compassionate release under section 1172.2 by a prisoner who undisputedly had "a serious and advanced illness with an end-of-life trajectory" such that he was presumptively entitled to release. (*Nijmeddin*, at p. 83.) We see nothing about *Nijmeddin* that is factually or legally analogous to this case. Not only are the relevant resentencing statutes entirely different, but Rose has offered no indication in this case, either in the trial court or on appeal, that he is suffering from any health condition.

Finally, having considered the entire record, we also reject Rose's claim that the trial court failed to conduct a full resentencing by considering sentencing reductions beyond the one-year reduction available under section

1172.75. The court's statement declining to exercise "any further discretion to strike any additional enhancements" reflects that it did, in fact, consider additional sentencing reductions beyond striking the one-year prior prison term enhancement. Moreover, we agree with the People the court's statements reflected the exercise of its discretion under section 1385, subdivision (c). This provision authorizes the dismissal of sentencing enhancements (*id.*, subd. (c)(1)), but makes endangerment to public safety a countervailing consideration (see *id.*, subd. (c)(2)). (See *People v. Walker* (2024) 16 Cal.5th 1024, 1029 [under § 1385, subd. (c), "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present"].) The court's statements that Rose was a "public safety risk" and it therefore would not "strike any additional enhancements" demonstrate that it considered, but declined, to exercise the discretion afforded by section 1385, subdivision (c).[6]

For all of these reasons, Rose fails to establish that the trial court abused its discretion under section 1172.75.

## II.

*No Jurisdiction to Review the Order Denying a* Franklin *Hearing*

The trial court entered its order denying Rose a *Franklin* hearing on June 22, 2023. Rose asks us to reverse this order under *People v. Briscoe* (2024) 105 Cal.App.5th 479. He claims that under *Briscoe* the denial was

---

[6] Rose does not contend in his opening brief or reply brief that the trial court's decision not to grant further sentencing reductions violated either section 1385, subdivision (c), or any other sentencing statute. He has therefore forfeited any such contention. (See, e.g., *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [claims not raised in the opening brief are waived].)

erroneous, and he is entitled to the retroactive benefits of its holding under the rule of *In re Estrada* (1965) 63 Cal.2d 740.

We conclude that we lack jurisdiction to review the June 22, 2023 order. A postjudgment order denying a *Franklin* hearing affects a defendant's substantial rights and is therefore appealable under section 1237, subdivision (b). (*People v. Sands* (2021) 70 Cal.App.5th 193, 200; see § 1237, subd. (b) [a criminal defendant may appeal "[f]rom any order made after judgment, affecting [their] substantial rights"].) To be timely, any notice of appeal of the denial order needed to be filed within 60 days. (Cal. Rules of Court, rule 8.308; see *People v. Mendez* (1999) 19 Cal.4th 1084, 1094 ["A timely notice of appeal . . . is 'essential to appellate jurisdiction' "; "[a]n untimely notice of appeal is 'wholly ineffectual' "].) However, Rose did not file a notice of appeal of the order within this period, and as a result, the order became final.[7] (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421 (*Ramirez*).)

Rose contends his challenge to the denial order can nevertheless be raised as part of this appeal of the section 1172.75 resentencing. This is so, he claims, because an appellate court may review "any intermediate order made prior to the most recent judgment." He is incorrect for two reasons. First, "[i]n general, an appealable order that is not appealed becomes final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment." (*Ramirez, supra,* 159 Cal.App.4th at p. 1421.)

Second, even if we could overlook the absence of a timely notice of appeal of the June 22, 2023 denial order (and we cannot), we would lack jurisdiction for a different reason: Rose failed to identify the denial order in

---

[7] Rose's current notice of appeal was filed August 26, 2024.

his current notice of appeal. "Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from. We have no jurisdiction over an order not mentioned in the notice of appeal." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170 [cleaned up]; see Cal. Rules of Court, rule 8.304(a)(4) [a notice of appeal "is sufficient if it identifies the particular judgment or order being appealed"].) Although a notice of appeal must be liberally construed, " '[t]he policy of liberally construing a notice of appeal in favor of its sufficiency . . . does not apply if the notice [of appeal] is so specific it cannot be read as reaching a judgment or order not mentioned at all.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 76.)

The notice of appeal filed in this case identifies the "**JUDGMENT ENTERED ON AUGUST 02, 2024**" as the only appealed decree. It describes the proceeding that is the subject of the appeal as a "**RESENTENCING/ MODIFICATION**." The only order attached to the notice of appeal is the August 2, 2024 resentencing minute order. Thus, the notice of appeal "manifests a clear and unmistakable intent to appeal only from [the August 2, 2024 resentencing] order." (*In re J.F.*, *supra*, 39 Cal.App.5th at p. 76 [cleaned up].) As a result, we "cannot liberally construe the notice to apply to a different, omitted order." (*Ibid.*)

## DISPOSITION

The August 2, 2024 order is affirmed.

DO, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.

14