Filed 7/21/21  P. v. Bettingen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>MURRAY GRANT BETTINGEN,<br><br>   Defendant and Appellant. | G058615<br><br>(Super. Ct. No. 17HF1017)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Mary Kreber Varipapa, Judge.  Reversed conditionally and remanded with directions.

Susan L. Ferguson for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

In 2017, defendant Murray Grant Bettingen pleaded guilty to first degree burglary and one misdemeanor count of receiving stolen property. The trial court suspended imposition of sentence and placed defendant on formal probation for three years. Two years later, after defendant committed a series of violations of his probation terms and conditions and violations of his mental health court program's requirements, the trial court revoked defendant's probation and sentenced him to a two-year prison term.

While defendant was on probation, the trial court diligently and patiently presided over defendant's many progress hearings. During that period of time, the Legislature enacted Penal Code sections 1001.35 and 1001.36,[1] which created a pretrial diversion program for certain defendants with mental health disorders. (Stats. 2018, ch. 34, § 24.) The Legislature expressly intended to provide diversion that meets the unique mental health treatment and support needs of individuals with mental disorders and increase their diversion "to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety." (§1001.35, subds. (a), (c).)

Consistent with that legislative purpose, section 1001.36, subdivision (c)(1) states that mental health treatment provided to individuals in the diversion program may be procured through private or public funding. As we explain in detail, the judgment in defendant's case was not final at the time section 1001.36 was enacted. Therefore, defendant was entitled to the benefits of the statute's retroactive application. (*People v. Frahs* (2020) 9 Cal.5th 618, 640 (*Frahs*).)

Here, the trial court concluded that because defendant had exhausted his opportunities through the Superior Court's mental health programs, the court had no other option at that point but to revoke defendant's probation and impose a prison

---

[1] All further statutory references are to the Penal Code.

sentence. The record shows the court did not consider whether the criteria for mental health diversion under section 1001.36 might have been satisfied as to any privately funded mental health program, such as the one defendant's mother had proposed on the record. The proposed program would be paid for by defendant's family. Based on the record before us, we conclude this issue was not forfeited.

We therefore conditionally reverse defendant's convictions and sentence and remand with directions that the trial court consider defendant's eligibility for diversion under section 1001.36. If the trial court finds defendant eligible, the court may grant diversion. If the defendant successfully completes diversion, the court shall dismiss the charged offenses.

We reject defendant's argument the trial court abused its discretion by revoking defendant's probation. Accordingly, if the court determines defendant does not meet the criteria under section 1001.36, then his convictions and sentence shall be reinstated. If the court finds defendant eligible and grants diversion, but defendant fails to successfully complete diversion, his convictions and sentence shall be reinstated.

## FACTS AND PROCEDURAL HISTORY

### I.

**DEFENDANT PLEADS GUILTY TO THE CHARGED OFFENSES AND IS PLACED ON FORMAL PROBATION WITH TERMS REQUIRING HIM TO COMPLETE A MENTAL HEALTH PROGRAM.**

In August 2017, defendant was charged in a felony complaint with one count of first degree burglary in violation of sections 459 and 460, subdivision (a) (count 1) and one misdemeanor count of receiving stolen property in violation of section 496 (count 2). As to count 1, the felony complaint alleged, pursuant to section 667.5, subdivision (c)(21), non-accomplices of defendant were present in the residence during the commission of the burglary, rendering the burglary offense a violent felony

and thus a strike under the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12). Defendant initially pleaded not guilty to both counts.

In October 2017, defendant moved to withdraw his not guilty pleas as to both counts; the court granted the motion. Defendant pleaded guilty to both counts of the felony complaint, offering the following facts as the basis for his plea: "In Orange County, California, on 7/30/2017, I willfully and unlawfully entered a residence, occupied by Kathleen I, while Kathleen I, was present, with the intention of committing theft. I also admit that I possessed stolen property, a vacuum cleaner, knowing that it was stolen." The trial court accepted the plea.

The trial court suspended imposition of sentence and placed defendant on three years' formal probation on terms and conditions that included he comply with the Assisted Intervention Court Plea Agreement, abide by the requirements of and complete the Assisted Intervention Court program, and serve 120 days in Orange County jail. The Assisted Intervention Court Plea Agreement stated that defendant understood he would be subject to a continued evaluation period to establish and/or confirm a psychiatric diagnosis. The court ordered defendant released to Telecare, a California state-licensed and health care approved facility, upon bed availability.

## II.

### DEFENDANT REGULARLY VIOLATES THE REQUIREMENTS OF THE ASSISTED INTERVENTION COURT PROGRAM.

Over the course of at least the next 18 months, defendant regularly failed to comply with the treatment terms of the Assisted Intervention Court program. On several

4

occasions during this period, he was taken into custody and ordered to serve jail time as a sanction for his failure to comply with program terms.[2]

**Assisted Intervention Court Program**

In March 2018, defendant appeared in court on six separate probation violations, each based on his failure to comply with the terms and conditions of the Assisted Intervention Court program. Defendant admitted each violation. The court revoked and reinstated formal probation with modified terms, including the imposition of a 6:00 p.m. daily curfew, a "20-day artificial sentence," and the requirement that defendant have no cell phone, iPad, or any other electrical device, except that he was permitted to use a computer supervised by Telecare at its discretion.

At the hearing, the court asked defendant if he had any questions, and defendant asked: "Just because I use my cell phone for everything, do I readdress that with you?" The court responded: "Absolutely. Mr. Bettingen, here is the plan. I want you to have your cell phone back. I want you to have contact with your mom back.[3] I want you to have the ability to have a later curfew. And I am willing and the team is willing to work with you on this. I look forward to giving you that cell phone back." The court added, "Nobody on this team wants you not to have contact with your mom.

---

[2] The Assisted Intervention Court Plea Agreement included defendant's agreement that he might receive a sanction from the trial court if he failed to comply with the rules and regulations of the Assisted Intervention Court program or the probation department. It also included the following provision: "I understand that one sanction that may be imposed by the court is to be taken into custody. I also understand that I have the right to a probation violation hearing before a judge whenever I am taken into custody for being in violation of probation. At the hearing, I have the right to confront any witnesses against me, subpoena witnesses against me, subpoena witnesses to testify on my behalf, and to testify myself or remain silent. I hereby give up my right to a probation violation hearing when I am taken into custody for a period of time no longer than 72 hours. When I am taken into custody for less than 72 hours for a violation of a condition of the [Assisted Intervention Court] program, this will not be considered a probation violation."

[3] The trial court had issued an order protecting defendant's mother.

5

But you are kind of a probation disaster that we want to see fix yourself; right. [¶] You can do this. I do not want to see you in custody. . . . [¶] Mr. Bettingen, I will make a deal with you. If you can keep to these rules until the next court date, I will give you back your cell phone on that next court date. Is that a good enough agreement for now on that issue?" Defendant answered, "Yes, your honor." Days later, defendant was back in court after he violated curfew and was at a Metro PCS store although he was not to have a cell phone.

The court's minutes from the following month note that defendant's progress had been favorable and the court granted his motion to be allowed the use of a cell phone with the condition that it be presented to the probation officer on Fridays so it could be searched. The court ordered that defendant's iPad be returned to him, but further ordered that defendant not have access to social media or cell phone apps and that his contacts must be preapproved and exclude individuals subject to the court's prior protective orders. The court also extended defendant's curfew by one hour for the sole purpose of enabling him to go to and from the gym during that time.

**Whatever It Takes Program**

In May 2018, the court's minutes show defendant was not in compliance with program terms. He was evaluated for and accepted into the Whatever It Takes (WIT) Court program. The court modified defendant's probation to terminate his participation in the Assisted Intervention Court program and to order defendant to complete the WIT Court program and abide by its terms.

In early June 2018, the court found defendant was not in compliance with WIT Court program terms. The court imposed a two-day jail sanction. Later that month, defendant admitted violating probation by failing to comply with the WIT Court program's terms. The court found defendant in violation of probation, ordered defendant to remain in custody and serve 12 days in jail as a sanction, and ordered all other terms and conditions of probation to remain the same.

6

# III.

**DEFENDANT CONTINUES TO VIOLATE THE TERMS OF THE WIT COURT PROGRAM AND CONTINUES TO BE SANCTIONED BY THE TRIAL COURT.**

In September 2018, defendant was again not in compliance with the WIT Court program, he was taken into custody, and the court imposed another two-day jail sanction. Later that month, the court ordered defendant "to surrender cell phone to Probation Officer."

One month later, again defendant was not in compliance with program terms; the court imposed a two-day jail sanction. (Defendant elected to serve an overnight jail sanction in lieu of a two-week confiscation of an iPad.) Later that month, the court reviewed the contacts contained in defendant's iPad and found him in direct violation of program rules. The court ordered defendant to neither possess nor use any cell phone, iPad, iWatch, computer, or other electronic device. The court ordered defendant to complete any counseling or behavior modification program as required and to attend his treatment program daily.

In December 2018, defendant was found to have "violated restriction" and the court imposed a two-day jail sanction. The following month, defendant was not in compliance with WIT Court program terms and the court ordered a GPS to be installed in lieu of a jail sanction for defendant's noncompliance. The month after that, the court's minutes stated defendant had displayed "inappropriate behavior" while in the program.

In March 2019, defendant was promoted to phase two of his WIT Court program. But at the beginning of the next month, defendant was not in compliance with the WIT Court program terms for which the court imposed an eight-hour voluntary community service sanction. After defendant failed to complete the community service hours required by the court, the court reimposed the eight-hour community service obligation and added 12 additional hours as a sanction.

7

In early May, defendant failed to report for drug testing and the court imposed a two-day jail sanction. Later that month, the court ordered that defendant perform two days of voluntary community service as a sanction for a missed appointment. The next month, the court imposed another two-day jail sanction and ordered cell phone privileges revoked while at Telecare for defendant's noncompliance with an unspecified term. At a WIT Court program progress review hearing in early July 2019, the court's minutes show defendant failed to report for a drug test a couple days earlier and the court imposed yet another two-day jail sanction.

## IV.

### THE WIT COURT PROGRAM TEAM RECOMMENDS THAT DEFENDANT'S PARTICIPATION IN THE PROGRAM BE TERMINATED; THE COURT TERMINATES DEFENDANT'S PARTICIPATION, REVOKES HIS PROBATION, AND SENTENCES HIM TO PRISON.

At the WIT Court program progress review hearing in July 2019, defendant was advised that the WIT Court program team recommended his participation in the program be terminated. At the continued progress review hearing, the trial court revoked defendant's probation as to both counts of the felony complaint on the ground defendant failed to comply with the WIT Court program terms and ordered that he be taken into custody.

### The Court's First Statement

At the probation violation disposition and reset hearing in September 2019, the court addressed defendant: "I think at this point we may have made the situation worse by keeping you in the program this long because the program has not been able, and *I'm not sure that the program does have the ability to match your treatment needs*. And that's not clear. But, I definitely know that the recommendation at this point, from both the treatment team as well as probation and supervision, is that we do not keep you in the program. It has not been effective. It has not been one that even keeping you in the program is likely to produce results, and *we don't have the treatment ability*.

8

"I don't know if 10 years from now, if we have a different understanding of what's happening, we would. I say that because I really just don't think it's all on you on this. I do think that you've tried to run things your own way from the very beginning. That hasn't been very successful. *But I also think that the treatment program itself has not necessarily had the right treatment response.*

"So we're here now after years of bringing you back in and bringing you back in and bringing you back in. At this point the team is, again, making the recommendation that you be terminated from the WIT Court program. *That does not mean that you don't need treatment; that doesn't mean that you don't need a different type of treatment. It just means that the treatment team does not think that they have the treatment for you. They have nothing left.*

"So that's kind of where we are right now. Any response on that end?" (Italics added.)

### The Statements of Defendant, His Mother and His Sister

Defendant responded, "No. I understand what you are saying."

The trial court added, "I mean, I'm sitting here with six cases before the court. You know, it's definitely—this was definitely something we wanted to change, the direction you were going. You could still change the direction you are going, but not by languishing in this program and keep getting in trouble and in trouble and in trouble. So that's kind of what we're looking at at this point."

Defendant's mother addressed the court at the hearing, noting that all of his medical records have labeled him as having major depressive disorder and that defendant had been told he suffered from bipolar disorder as well. She advised the court of a local center with a treatment program called Transcranial Magnetic Stimulation (TMS) that she stated had a very high success rate with people suffering from major depressive disorder. She explained: "I've done a great deal of research and I've met with a number of psychiatrists and different facilities here, and there is a program which I'd like to bring

9

up.  [¶] I don't know if the court is familiar with it or not.  I know that the medical community has been—only in the last couple of years jumped on board.  For example, I know Saint Joseph Hospital.  There's a Southern California TMS Center, and it is treatment that is very complementary to the medications and has 70 percent success rate in terms of people with major depressive disorder.  It also does deal with bipolar.  It was approved by the FDA in 2008.

"That treatment, you can tell in a very short time frame how it will affect them.  70 percent is very, very high.  It's hard to even get a combination of medications to have that kind of result.  So I'm not talking about something that is not proven.  It's proven.  It's being used for PTSD as well.  There are a number of experts, one of which I was hoping would be here today to speak on behalf of it from a medical standpoint.  Her schedule doesn't allow it.  But she is willing to speak to the team if they want to do it, you know, in the conference room in terms of what that data is.

"But I'm asking you for one last chance for my son. And I am asking it in a sense not just because I'm a mother but because there are new treatments, and it is something that we as the family would provide.  It would not be something that the court would have to fund in any way whatsoever.  It's something we would do for him.  It is a half hour treatment, five days week for a six-week period of time.  They know about halfway through how that is going to affect him.  70 percent chance is really high.

"50 percent of those have total remission in depression.  That's how you have him classified right now.  And all I'm asking is for him to have that chance.  If you feel that you need to have the expert here to speak on behalf of it, more from a medical standpoint or with the team, she's made herself available and she can do it on October 21st at 1:00 o'clock."

Defendant's sister addressed the court, expressing her belief that the WIT Court program has helped defendant "even though it's maybe [on a] slower trajectory

10

than the typical person." She also stated that defendant has family support to help him succeed and that she knew "he has it in him" and that "he wants to succeed."

<strong>The Trial Court's Ruling</strong>

After the prosecutor and defendant's attorney submitted, the trial court revoked defendant's probation and stated it would impose a prison term, explaining: "So Mr. Bettingen, here's where we are. [¶] *I don't disagree with your sister or your mom on many of those items proposed.* When we took you into this program initially, it was at a risk because you come in, your profile was unclear on certain ends, and we knew the program. The program is hyper-supervision. It is hyper-therapy and treatment. It does not necessarily have all that we are looking for, even as represented by your mom and sister. [¶] We did—and we can't—we're not—*the program is not changing at this point. I don't have those options at this point.* And we did try and keep you in probably, again, longer than we should have. We kept you in and knowing that you were running up against the supervision and running up against the treatment, and that we didn't have the treatment component that was necessary to support you in those needs. *So I agree with your mom and your sister on your needs. I agree with your mom and your sister in your potential.* And I agree with your mom and your sister, and, quite frankly, I think the team does as well, that *you have the potential to do very, very well.*

"But you have not done well in *this* program. That is not, again, the court saying that you can't or that you won't. *It's saying that we do not have you matched with the right program, and I don't have another program that matches those particular needs.* So we were, again, working it as hard as we could, and that's just where we are at this point.

"The program is 18 months. It's a five phase program. We just struggled to even get you past phrase 1. Again, that's not necessarily saying that that's 100 percent your fault *if we don't have the treatment capability that is necessary in your case.* So it is a situation that we looked at very closely. And what we looked at very closely was the

11

repeated behaviors.  I just can't get past every single time you came in, it was a behavior that I don't have a response to or I don't have a team that can respond to that.

"I have a probation officer that can take you into custody and that's about the limit of what we could do.  We've tried phones.  We've tried protective orders.  We've tried, I think, GPS.  We've tried just about everything that we have under our repertoire of behaviors or behavior modification, and we tried that in conjunction with the treatment team.

"So at this point Mr. Bettingen, the court is prepared to go forward with the termination from the WIT Court program.  You are here on six separate cases.  The indicated sentence is to sentence you to two years on the felony case."  (Italics added.)

The court stated:  "The basis of the probation violation is failure to engage in program rules" and that "I think we'd only go forward on the most recent, not the cumulative" regarding the new phone "[s]o the basis of the violation is failure to comply with program rules.  We would only go forward on the most recent which would be the finding of the phone, as in violation of the direct order."

Defendant waived a probation violation hearing and admitted he violated probation as to both counts of the felony complaint.

The trial court found defendant in violation of probation and ordered his probation terminated because defendant failed to comply with the WIT Court program terms and could not complete the program.  The court sentenced defendant to the low

12

term of two years on count 1 and stayed execution of sentence under section 654 on count 2. Defendant appealed.[4]

## DISCUSSION

## I.

### MENTAL HEALTH DIVERSION UNDER SECTION 1001.36

In June 2018, while defendant was on probation, the Governor signed into law Assembly Bill No. 1810 (2017-2018 Reg. Sess.) that enacted sections 1001.35 and 1001.36, effective immediately. (Stats. 2018, ch. 34, § 24; *Frahs, supra*, 9 Cal.5th at p. 626.) Section 1001.36 gives the trial court discretion to grant pretrial diversion for defendants who have qualifying mental health disorders. (*Frahs, supra*, 9 Cal.5th at p. 626.)

Subdivision (c) of section 1001.36 defines the term "pretrial diversion" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." Section 1001.36, subdivision (c)(1)(B) provides that the mental health treatment "may be procured using private or public funds."

The purpose of the pretrial diversion statute "is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public

---

[4] The trial court denied defendant's request for a certificate of probable cause. As acknowledged by the Attorney General in the respondent's brief, the court's denial of defendant's request is immaterial here because defendant is not challenging the validity of his guilty plea when it was made but instead seeks relief because the law subsequently changed to the defendant's potential benefit. (See *People v. Stamps* (2020) 9 Cal.5th 685, 692, 696 [the defendant was not required to obtain a certificate of probable cause to claim on appeal that the new law applied to him retroactively, and that the new law applies because his case is not yet final on appeal; the defendant's appellate claim did not constitute an attack on the validity of his plea because it does not challenge his plea as defective when made].)

13

safety.  [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.  [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a)-(c).)

"As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following:  (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. . . .  [¶] If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).)"[5] (*Frahs, supra*, 9 Cal.5th at pp. 626-627.)

Subdivision (e) of section 1001.36 provides:  "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court *shall dismiss the defendant's criminal charges that were the subject of the criminal*

---

[5]  Subdivision (b)(3) of section 1001.36 provides:  "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion.  The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel.  If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate."

14

*proceedings at the time of the initial diversion. . . .* A court may conclude that the defendant has performed satisfactorily if the defendant has substantially complied with the requirements of diversion, has avoided significant new violations of law unrelated to the defendant's mental health condition, and has a plan in place for long-term mental health care. If the court dismisses the charges, the clerk of the court shall file a record with the Department of Justice indicating the disposition of the case diverted pursuant to this section. *Upon successful completion of diversion, if the court dismisses the charges, the arrest upon which the diversion was based shall be deemed never to have occurred*, and the court shall order access to the record of the arrest restricted in accordance with Section 1001.9, except as specified in subdivisions (g) and (h). *The defendant who successfully completes diversion may indicate in response to any question concerning the defendant's prior criminal record that the defendant was not arrested or diverted for the offense*, except as specified in subdivision (g)." (Italics added.)

Subdivision (f) of section 1001.36 provides: "A record pertaining to an arrest resulting in successful completion of diversion, or any record generated as a result of the defendant's application for or participation in diversion, shall not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate."

Section 1001.36 applies to defendants who, like defendant here, were convicted before the statute's effective date but whose convictions are not yet final on appeal. (*People v. Weaver* (2019) 36 Cal.App.5th 1103, 1120.) Acknowledging section 1001.36's references to "'until adjudication'" and "'waive[] his or her right to a speedy trial'" the appellate court held: "[W]e view these portions of the statute as demonstrating the Legislature's intent that individuals who commit their crimes after the effective date of section 1001.36 and whose guilt has been adjudicated in the form of a plea of guilty or no contest or a conviction after trial are no longer eligible for pretrial diversion under the statute. But for individuals like [the defendant], whose convictions are not yet final on

15

appeal but were never given an opportunity for diversion because they were convicted prior to the statute's effective date, we see nothing in the text of section 1001.36 sufficient to overcome the [*In re*] *Estrada* [(1965) 63 Cal.2d 740] presumption." (*People v. Weaver, supra*, at p. 1120.)

The Supreme Court in *Frahs, supra*, 9 Cal.5th 618 expressly approved of *People v. Weaver, supra*, 36 Cal.App.5th 1103 as "in accord" with its holding. (See *Frahs, supra*, at p. 631 & fn. 2.) In *Frahs*, the Supreme Court held that section 1001.36 retroactively applied to the defendant whose appeal was pending from the judgment of conviction following a jury trial when section 1001.36 became effective. (*Id.* at pp. 624-625.) That Attorney General acknowledges in the respondent's brief that "[s]ection 1001.36 applies retroactively to cases that are not final on appeal."

## II.

### THE TRIAL COURT DID NOT EXERCISE ITS DISCRETION UNDER SECTION 1001.36 WITH RESPECT TO PRIVATELY FUNDED MENTAL HEALTH TREATMENT PROGRAMS.

In his opening brief, defendant argues the trial court erred because it failed to exercise its discretion under section 1001.36. The record shows the trial court patiently and diligently presided over this matter throughout the course of defendant's eventful probation period and the many hearings that occurred during that time. The trial court regularly exercised its discretion in dealing with defendant's violations of the rules of his mental health programs.

At the probation violation disposition and reset hearing in September 2019, before revoking defendant's probation and sentencing him to prison, the trial court stated that although defendant repeatedly violated the requirements of mental health treatment programs offered through the court system, the court believed that the court mental health treatment programs did not meet his needs and were otherwise not the right fit for him. Because the treatment programs were not responsive to defendant's needs, the court

16

stated defendant was not entirely responsible for his failure to comply with the programs' requirements.

After defendant's mother proposed that the court consider a local program which, based on her research, appeared to fit defendant's specialized mental health needs and which she asserted defendant's family would pay for, the trial court stated it agreed with mother's assessment of defendant's needs and the prospect that he could succeed in the right program. But the court stopped short of any consideration of the proposed program.

We have quoted much of the court's statements, *ante*. For purposes of this appeal, we highlight the following comments of the court: "We did—and we can't—we're not—the program is not changing at this point. I don't have those options at this point." Instead of exploring whether the proposed mental health program would meet defendant's specialized health needs or evaluating whether the mental health diversion criteria of section 1001.36 would be met, the court remarked: "But you have not done well in *this* program. That is not, again, the court saying that you can't or that you won't. *It's saying that we do not have you matched with the right program, and I don't have another program that matches those particular needs.* So we were, again, working it as hard as we could, and that's just where we are at this point." (Italics added.) The court reiterated, "[T]hat's not necessarily saying that that's 100 percent your fault *if we don't have the treatment capability that is necessary in your case.* So it is a situation that we looked at very closely. And what we looked at very closely was the repeated behaviors. I just can't get past every single time you came in, it was a behavior that I don't have a response to or I don't have a team that can respond to that." (Italics added.)

We commend the trial court for making an excellent record for our review. The record shows the court came to its decision with the understanding that once it determined efforts through publicly funded court mental health programs had been exhausted without success, the court had no choice but to terminate defendant's probation

17

and sentence him to prison. But section 1001.36 expressly provides for the consideration of privately funded mental health programs for defendants who meet the statute's mental health diversion criteria. Although section 1001.36 had been enacted 15 months before the hearing, absent from our record is any reference to that statute by anyone—the prosecutor, defendant's counsel, or the trial court—at any time.

Therefore, we are not comfortable concluding the trial court exercised its discretion under section 1001.36 to consider whether the private program proposed by defendant's mother, or any other privately funded program, would meet defendant's specialized medical needs and, if so, whether defendant is otherwise eligible for mental health diversion under that statute. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847-848 [the failure to exercise any discretion is an abuse of discretion].)

The Attorney General argues that because section 1001.36 had been in effect for over a year before the hearing in September 2019 and yet defendant did not raise or request mental health diversion under that statute in the trial court, his argument is forfeited. The forfeiture rule applies when a defendant has had the opportunity to request a trial court to grant discretionary relief but does not raise the issue until appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.) Here, however, the prospect of whether a particular privately funded mental health program might work for defendant was brought to the attention of the court on the record by defendant's mother. The court, however, did not entertain any consideration of the private program. Under these circumstances, defendant did not forfeit his challenge that the trial court erred by failing to consider the private program. We cannot say an argument was forfeited when it was actually raised in this case on the record by defendant's mother at the hearing.

We further conclude this matter is not moot. By our calculation, defendant might have completed serving his prison sentence. If, following remand, however, the trial court exercises its discretion to place defendant in mental health diversion under section 1001.36, defendant has the opportunity to have the charged offenses, including

18

the burglary charge which qualifies as a violent felony and strike offense, dismissed upon his successful completion of the program.

We therefore conditionally reverse the judgment and remand for the trial court to exercise its discretion in determining defendant's eligibility for pretrial diversion under section 1001.36, whether through a publicly or privately funded program, with directions set forth in detail in the Disposition, *post*.

### III.
**THE TRIAL COURT DID NOT ERR BY REVOKING PROBATION BASED ON DEFENDANT'S POSSESSION OF A CELL PHONE; IF, FOLLOWING REMAND, THE TRIAL COURT CONCLUDES DEFENDANT IS NOT ELIGIBLE FOR PRETRIAL DIVERSION OR IF DEFENDANT DOES NOT SUCCESSFULLY COMPLETE DIVERSION, DEFENDANT'S CONVICTIONS AND SENTENCE SHALL BE REINSTATED.**

Because we conditionally reverse the judgment and remand with directions, we address defendant's argument the trial court erred by revoking his probation. We conclude the trial court did not abuse its discretion.

"[T]he court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe . . . the person has violated any of the conditions of their supervision." (§ 1203.2, subd. (a).) It is well established the trial court has broad discretion in deciding whether to revoke probation. (*People v. Sims* (2021) 59 Cal.App.5th 943, 959; see *People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) Before probation may be revoked, a probation violation must be established by a preponderance of the evidence (*People v. Rodriguez, supra*, at p. 447) and the trial court's factual findings are reviewed for substantial evidence (*People v. Urke* (2011) 197 Cal.App.4th 766, 773).

Here, defendant does not contend insufficient evidence supports the court's finding that defendant possessed a cell phone and thereby violated the terms and conditions of his probation. Indeed, defendant admitted this latest violation.

19

Instead, defendant argues the trial court's "decision to revoke probation and sentence [defendant] to prison, after 18 months in a mental health program, for possessing a cellular phone, was an abuse of discretion. Not only was the violation hyper-technical, but the court acknowledged that it made the situation worse by keeping [defendant] in the AI program because that program did not have the ability to meet [defendant]'s treatment needs. . . . The court also acknowledged that it was not '100 percent [defendant]'s fault' and that he needed a different type of treatment. . . . Finally, there was no suggestion whatsoever that appellant was a danger to society."

"[U]pon finding a violation of probation and revoking probation, the court has several sentencing options. [Citation.] It may reinstate probation on the same terms, reinstate probation with modified terms, or terminate probation and sentence the defendant to state prison." (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1420.) The trial court's decision to reinstate probation or to impose the original sentence is reviewed for an abuse of discretion. (*People v. Downey* (2000) 82 Cal.App.4th 899, 909; *People v. Medina* (2001) 89 Cal.App.4th 318, 323.) When, however, "the record reveals that a defendant's violation of the terms of probation was the result of irresponsible or willful behavior, termination of probation and imposition of a prison sentence is no abuse of discretion." (*People v. Kingston* (2019) 41 Cal.App.5th 272, 278.)

Defendant does not argue that his violation of the terms of probation leading to the revocation of his probation and the imposition of a prison sentence was anything other than "irresponsible or willful." (*People v. Kingston, supra*, 41 Cal.App.5th at p. 278.) Based on this record of willful violation of the terms of probation, the trial court did not abuse its discretion by terminating probation and imposing sentence accordingly.

20

## DISPOSITION

Defendant's convictions and sentence are conditionally reversed and the matter is remanded with directions that the trial court consider defendant's eligibility for diversion, whether publicly or privately funded, and make findings under the criteria set forth in section 1001.36. If the trial court finds that defendant suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If defendant successfully completes diversion, then the court shall dismiss the charged offenses. However, if the court determines that defendant does not meet the criteria under section 1001.36, or if defendant does not successfully complete diversion, then his convictions and sentence shall be reinstated.

FYBEL, J.

I CONCUR:

BEDSWORTH, ACTING P. J.

21

**THOMPSON, J.,** dissenting.  I respectfully dissent.  On the merits, I cannot agree the court erred by failing to divert defendant under Penal Code section 1001.36.[1]  But we need not and should not reach the merits.  Instead, the judgment should be affirmed on established procedural grounds—forfeiture and lack of prejudice.

*1. Forfeiture*

It is a bedrock principle of appellate review that "'a right of any . . . sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."'"  (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881.)  The purpose of the forfeiture rule is "'to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.'"  (*Id.* at p. 881.)  "'[I]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.'"  (*People v. McCullough* (2013) 56 Cal.4th 589, 593.)

The record before us contains about 75 pages of reporter's transcript, reflecting various hearings at which defendant's mental health treatment and sentencing were discussed.  The probation violation sentencing hearing, which resulted in the challenged judgment, takes up 30 of those pages and includes extensive discussions between the trial court, counsel, defendant, and his family members.  And that hearing took place more than a year after section 1001.36 was enacted and became effective.

At no point during any of the proceedings in the trial court was section 1001.36 ever mentioned by anyone.  At no point was any form of pretrial diversion discussed, or any right to any such procedure asserted.  Now, for the first time on appeal, defendant claims he was entitled to pretrial diversion under section 1001.36.  This is a classic forfeiture situation.  Defendant, having failed to request relief from the trial court under section 1001.36, cannot raise the issue for the first time on appeal.

---

[1] All further statutory references are to the Penal Code.

1

The majority's arguments to the contrary are unavailing for three reasons. First, the majority acknowledges no one referred to section 1001.36 at any point in the proceedings below. But the majority sees this omission as evidence *the trial court failed to exercise its discretion*, rather than defendant forfeited the claim. This is wrong. The general rule is affirmative evidence of a trial court's misunderstanding of the scope of its discretion is necessary for reversal, rather than mere silence in the record. (*People v. Alvarez* (1996) 49 Cal.App.4th 679, 695.) And even where a trial court's omission suggests an improper consideration might have affected the judgment in sentencing, we nonetheless "must presume the trial court knows and follows the law, until the contrary is shown." (*People v. Bush* (2016) 245 Cal.App.4th 992, 1002; see also *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103.)

Second, the majority asserts defendant's mother preserved the issue for our review by suggesting a privately funded mental health program as an alternative. This is just not true. His mother asked the court to allow him to continue receiving treatment (albeit of a different type) in his existing Whatever It Takes Court (WIT) program, which was a condition of his probation. She did not ask for his conviction to be set aside in favor of pretrial diversion. Also defense counsel, who was present at the hearing and was charged with understanding, advocating, and clarifying permissible sentencing choices (*People v. Scott* (1994) 9 Cal.4th 331, 353), did not consider mother's statement as an implied request for pretrial diversion or make that implication clear to the trial court.

Third, there is an analytical incongruity in the majority's approach. On the one hand, the majority finds the absence of a reference to section 1001.36 by the trial court significant enough to overcome the presumption that the court knew and properly applied the law. On the other hand, the majority finds the absence of a reference to section 1001.36 by defendant irrelevant to determining whether he forfeited his claim. This incongruity violates well-settled and important principles limiting appellate review and effectively requires trial courts to apply section 1001.36 sua sponte.

2

*2. Prejudice*

Another core principle of appellate review, enshrined in our state's Constitution, is that "[n]o judgment shall be set aside . . . in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) This principle is codified at least twice in the Penal Code. Section 1258, requires us to ignore "technical errors or defects . . . which do not affect the substantial rights of the parties;" and section 1404, states, "[n]either a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, *unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right*." (Italics added.)

This principle applies here because, as the Attorney General argues, there is a more natural conclusion to be drawn from the absence of discussion of section 1001.36 at the trial court level—everyone involved in this case understood defendant would not be found eligible for diversion under section 1001.36 since he had already received substantially the same treatment he would have received had the statute been invoked at the inception of his case, and that treatment had utterly failed. It is easy to explain why.

Section 1001.36 permits pretrial diversion for a maximum of two years. (§ 1001.36, subd. (c)(3).) The defendant is referred to a particular mental health treatment program, which the court must be satisfied "will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (c)(1)(A).) Section 1001.36 also allows the court to modify the program or reinstate criminal proceedings if "[t]he defendant is performing unsatisfactorily in the assigned program." (§ 1001.36, subd. (d)(4)(A).) Notably, nothing in the statute requires the court to exhaust all available treatment options—the court may reinstate criminal proceedings against the defendant if the defendant fails in "the assigned program," not any conceivable program.

3

Here, defendant began mental health treatment on supervised probation in the collaborative court mental health program after he pled guilty in 2017. Over the next two years, he repeatedly violated the terms of his probation and failed to make significant progress in his treatment program. He was shifted from his initial placement in the intensely supervised Assisted Intervention Court program into the WIT program, which involved "hyper-supervision" and "hyper-therapy and treatment." By the probation violation sentencing hearing in 2019, the mental health professionals running his WIT treatment program concluded it had failed and recommended terminating his treatment.

Through this course of collaborative court mental health treatment, defendant received essentially the same two years' worth of treatment promised by section 1001.36. Moreover, if he had been given mental health treatment through pretrial diversion under section 1001.36 from the beginning, he would have been *ineligible* for any further treatment because his two years would have been exhausted. Only by virtue of the timing of the enactment of section 1001.36 is defendant attempting to seek this second bite at the mental health treatment apple. Nonetheless, having already received substantially the same relief as that which would be available under section 1001.36, he cannot show any miscarriage of justice or prejudice.

The majority claims the trial court felt constrained to utilize only publicly funded mental health treatment options, and thus failed to appropriately consider the privately funded alternative treatment suggested by defendant's mother. This is legally and factually incorrect. Section 1001.36 does not require the court to exhaust all possible treatment options. Instead, it gives the court discretion to assign defendant to a program, and should defendant fail in that program, to modify his program (as the court initially did here) or to reinstate criminal proceedings (as the court did when the WIT program conclusively failed). And, in any event, the record is by no means clear that the trial court declined to place defendant in the privately funded program suggested by defendant's mother because the court thought it lacked the power to do so.

4

Despite defendant's "potential" and the idea that other treatment or "the right program" could help him, the trial court was plainly convinced treatment was not working or was working too slowly, and that his behaviors could not be controlled even through the hyper-supervised probation process. The trial court "just [couldn't] get past every single time [defendant] came in, it was a behavior that [the court didn't] have a response to or [didn't] have a team that can respond to that."

Finally, the court never indicated any interest in the transcranial magnetic stimulation program suggested by defendant's mother, or suggested it was precluded from sending him to such a program by lack of legal authority. The majority implies those conclusions into the court's statements, and relies upon those implications to conclude the court did not understand its own legal authority. Again, this approach violates the presumption the trial court knows and follows the law.

*3. Conclusion*

The majority glosses over these basic procedural principles of proper appellate review to reach the merits of this case, even though defendant failed to assert any rights under section 1001.36 or any pretrial diversion theory to the trial court; and even though, at the time of judgment, nearly two years had passed since his guilty plea and his entry into intense mental health treatment—which, in the opinion of the mental health experts treating him, had failed. Accordingly, the judgment must be affirmed.



THOMPSON, J.



5